UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAROLYN HAMMELL, et al, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:21-cv-01039-MHH |
| } | |
| GRANITE CONSTRUCTION } | |
| COMPANY, INC., et al, } | |
| } | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In 2018, Carolyn Hammell and more than 100 other plaintiffs sued Granite Construction Company, Inc., Volkert, Inc., and several subcontractors in the Circuit Court of Jefferson County, Alabama. (Doc. 1-1). The plaintiffs assert state law claims relating to a highway construction project at the I-59/I-20/I-65 junction in Birmingham. Recently, Granite removed the action to federal court under 28 U.S.C. § 1442, the federal officer removal statute. (Doc. 1). The plaintiffs have asked the Court to return their action to state court. The plaintiffs argue that the defendants waited too long to remove the state court action and that, even if removal was timely, Granite, a private contractor, may not invoke the federal officer removal statute.

(Doc. 77; Doc. 79).  For the reasons discussed below, the Court grants the plaintiffs' motion to remand.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2011, the Alabama Department of Transportation – ALDOT – began a project to replace the bridge and provide new ramps at the I-59/20 and I-65 interchange in downtown Birmingham, Alabama.  *Austin v. Ala. Dep't of Transp.*, 2016 WL 6699307, at *2 (N.D. Ala. Nov. 15, 2016).  ALDOT contracted with Volkert, Inc. for "construction engineering and inspection services," which "included construction monitoring services to ensure that the construction performed by ALDOT's contractor on the [p]roject complied with plans and specifications." (Doc. 4-14, p. 2, ¶ 6).[1]  The Federal Highway Administration – the FHWA – provided funding for the project and reserved the right to supervise certain aspects of the project.  (Doc. 1, pp. 65-105).  After ALDOT, the FHWA, and the U.S. Department of Transportation found that the proposed project would have "no significant impact upon the human environment," (Doc. 86-2, p. 20), ALDOT hired Granite to serve as the general contractor on the project, (Doc. 86, Ex. 2).  Granite and several subcontractors commenced work in 2016, with a projected completion date of August 31, 2018.  (Doc. 1, p. 116).

---

[1] Volkert did not perform construction.  (Doc. 4-14, p. 1, ¶ 3).

2

In August of 2018, as the project neared completion, Ms. Hammell and the other plaintiffs sued Granite, Volkert, and several subcontractors in state court, asserting claims for trespass, private nuisance, and negligence based on the project's alleged impact on their properties. (Doc. 1-1, pp. 1, 15-18). In their state court complaint, the plaintiffs did not allege that the FHWA was involved in the project. Between the filing of the lawsuit in 2018 and April of 2021, Granite served more than 100 interrogatories and deposed 14 plaintiffs as it explored the plaintiffs' claims. (Doc. 86-1, pp. 1-3).

After Granite deposed the plaintiffs, it served a subpoena on ALDOT, "seeking the Project-specific agreement and oversight plan between ALDOT and the FHWA . . . and any inspection reports from the FHWA." (Doc. 86-1, p. 3). Between July 20, 2021 and July 23, 2021, ALDOT produced the Project of Division Interest (PoDI) Stewardship & Oversight Plans and FHWA inspection reports for the I-59/I-65 project. (Doc. 1, pp. 111-126; Doc. 86-1, p. 3). Based on the PoDI and other documents that ALDOT provided, on July 28, 2021, Granite filed a notice of removal, citing the federal officer removal statute as the basis for federal subject matter jurisdiction over the plaintiffs' state law claims. (Doc. 1, pp. 1-3).

## II.   LEGAL STANDARD – FEDERAL OFFICER REMOVAL

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Federal district courts may not

exercise jurisdiction over an action "'absent a statutory basis.'" *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). Generally, federal courts exercise jurisdiction over civil lawsuits under two statutes.

> In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that "aris[e] under" federal law, § 1331, and cases in which the amount in controversy exceeds $ 75,000 and there is diversity of citizenship among the parties, § 1332(a). These jurisdictional grants are known as "federal-question jurisdiction" and "diversity jurisdiction," respectively.

*Home Depot*, 139 S. Ct. at 1746. When a party removes a case to federal court under § 1331 or § 1332, a district court must "construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party, in this case the plaintiffs." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998).

Federal officer jurisdiction differs from federal question jurisdiction and diversity jurisdiction. "[U]nlike other removal doctrines," removal under 28 U.S.C. § 1142 "is not narrow or limited." *State v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017) (quotations omitted). Federal officer removal "protect[s] federal officers from interference by hostile state courts." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 148 (2007) (quoting *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)).

In relevant part, the federal officer removal statute states:

> (a) A civil action or criminal prosecution that is commenced in a State Court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officers (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). Granite argues that it may remove the plaintiffs' state court action to federal court under § 1442 because the company is a "person acting under [a federal] officer."

In the Eleventh Circuit, a district court must use a three-part test to evaluate whether a private company may remove a case from state to federal court under § 1442(a):

> First, [the defendant] must show that it is a person within the meaning of the statute who acted under a federal officer.
>
> Second, [the defendant] must show that it performed the actions for which it is being sued under color of federal office. Stated another way, [the defendant] must show a causal connection between what the officer has done under the asserted official authority and the action against him.
>
> Third, [the defendant] must raise a colorable federal defense.

*Caver v. Central Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (internal citations and quotations omitted). Thus, to secure a federal forum, Granite

must demonstrate that it was "acting under" the FHWA on ALDOT's highway project.

"The words 'acting under' are broad, and . . . the statute must be liberally construed. But broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson*, 551 U.S. at 147 (2007) (internal citations and quotations omitted). In *Watson*, the United States Supreme Court examined "whether the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail brings that company within the scope of the [statute]." 551 U.S. at 145. The Supreme Court held that the answer to this question is no. The Supreme Court stated:

> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.

*Watson*, 551 U.S. at 153. If the removing party's relationship with a federal agency is nothing more than "the usual regulator/regulated relationship," then the relationship will not support federal jurisdiction, even if the conduct for which the defendant is being sued is regulated by a federal agency. *Watson*, 551 U.S. at 157.

To qualify for a federal forum under § 1442, the person seeking the forum must be acting on behalf of a federal officer.  *Watson*, 551 U.S. at 157.

## III.   DISCUSSION

As the general contractor on the I-59/I-65 project, Granite acted on behalf of ALDOT, not the FHWA.  In the realm of interstate highway construction, the federal government's role is limited.  The federal government provides funding for interstate highways, but states own the roads within their boundaries. https://www.fhwa.dot.gov/interstate/faq.cfm (last visited Dec. 10, 2021); *see also City of Walker v. Louisiana, Through the Dep't of Transp. & Dev.*, 877 F.3d 563, 570 (5th Cir. 2017).  The FHWA generally leaves the work of highway construction to the states that own the roadways.

According to the PoDIs and other documents that Granite obtained through its subpoena to ALDOT, the FHWA reserved the right to monitor, inspect, and approve aspects of the I-59/I-65 project, but the FHWA was not involved in the day-to-day design, construction, or inspection activities on the project.  For example, though FHWA retained the ability to approve the design of the new interchange, it did not select the design or the designer.  Likewise, the FHWA retained the ability to inspect the final product, but it did not construct the interchange or hire the company to which construction responsibilities were contractually delegated, namely Granite.  Thus, Granite's relationship with the FHWA on the I-59/I-65

7

project is that of regulator/regulated, and the federal officer removal statute does not authorize this Court to maintain jurisdiction over the plaintiffs' state law claims.

The Fifth Circuit's decision in *City of Walker* illustrates the point.  There a private company, James Construction Group, contracted with the state's department of transportation, LA DOTD, to repair sections of Interstate 12.  *City of Walker*, 877 F.3d at 565-66.  Several plaintiffs sued James Construction, asserting claims relating to the company's work on the highway project.  *City of Walker*, 877 F.3d at 565.  Though federal appropriations funded the project, and the company's work "was subject to inspection and approval by federal regulators," James Construction offered little evidence to demonstrate that the company "was operating as a federal contractor or had a similar relationship with a federal supervisor."  *City of Walker*, 877 F.3d at 569, 571.  Therefore, the Fifth Circuit concluded that James Construction was not "acting under" the FHWA on the project.  *City of Walker*, 877 F.3d at 569-71.

Granite argues that in *City of Walker*, the degree of federal oversight was minimal and consistent with a typical state highway project whereas here, the FHWA retained "unique . . . control over design, plans, specifications, contract administration, construction inspection, approval of changes, and final acceptance" of the I-59/I-65 project through two PoDI designations for the project, and the FHWA conducted and documented several on-site inspections of the project.  (Doc.

86, p. 35). Based on its review of the PoDIs, the FHWA inspection reports, and the Stewardship and Oversight Agreement between the FHWA and ALDOT, the Court finds that, though the FHWA monitored the I-59/I-65 project more closely than it monitored the I-12 project in *City of Walker*, the nature of the relationship between Granite and the FHWA is not different from the relationship between James Construction and the FHWA. *Watson*, 551 U.S. at 157.

Several factors point to this conclusion. For one, Granite did not know the extent of the FHWA's involvement in the I-59/I-65 construction project until it subpoenaed ALDOT and reviewed ALDOT's contract with the FHWA. If Granite had had a contractor or subcontractor relationship with the FHWA, Granite likely would have been aware of the scope of the FHWA's work on the project. Granite would not have had to subpoena third-party documents to explore and identify the nature of its relationship with the FHWA.

In addition, the tasks that the FHWA reserved for itself in the PoDI designations for the I-59/I-65 project concern project oversight. The initial PoDI designation is labeled "NHS Projects with Retained FHWA Project Approval; 23 USC 106(c)(1)." (Doc. 1, p. 111). As indicated in Attachment B to the Stewardship and Oversight Agreement, this type of PoDI "reflect[s] the risk-based need for FHWA to retain responsibilities for certain project approval actions, either on a programmatic basis or project-level basis." (Doc. 1, pp. 81-82). The initial PoDI

9

for the I-59/I-65 project indicates that the FHWA would review ten "general project elements": "Project Authorization and Project Agreement; Project Planning and Programming; Project Financing; Environmental Clearances/NEPA; Preliminary Design; Final Design; Plans, Specification, & Estimate Development; Advertising and Award; Contract Administration; and Construction Inspection & Quality." (Doc. 1, p. 112). Additionally, the FHWA reserved the following "general [Stewardship and Oversight] activities" for itself: "Retained Project Approval Actions; Project/Technical Meetings; Document/Plan Review; and Field Review/Inspection & Report." (Doc. 1, p. 112). Thus, the activities assigned to the FHWA in the initial PoDI concern review of work completed by others. The FHWA did not retain the right to direct the work of contractors and subcontractors on the I-59/I-65 project. The right of review and approval concerns regulation, not implementation.

The second PoDI designation is labeled: "Projects Selected for Risk-based Stewardship & Oversight; 23 USC 106(g)." (Doc. 1, p. 114). The second PoDI lists the same ten "general project elements that will be reviewed" and the same four "general [Stewardship and Oversight] activities that the Division will conduct in response to the risk." (Doc. 1, p. 114). Additionally, the PoDI provides "a general description of the elements that will be reviewed":

Plan-in hand and PS&E inspections meetings

    Approval of exceptions to design standards (23 CFR 625.3(f))

    Approve addenda during advertising period (23 CFR 635.112)

    Concur in award of contract (23 CFR 635.114)

    Concur in rejection of all bids (23 CFR 635.114)

    Approve changes and extra work (23 CFR 635.120)

    Approve contract time extensions (23 CFR 635.120)

    Concur in termination of construction contracts (23 CFR 635.125)

    Initial construction inspection

    Intermediate construction inspections

    Final inspection/acceptance of completed work (23 USC 114(a))

(Doc. 1, p. 114). Eight of the eleven activities in the second PoDI involve FHWA approval, concurrence, or acceptance. The other three FHWA activities involve inspections of the I-59/I-65 project. In short, the FHWA monitored ALDOT's use of the federal funds allocated to the I-59/I-65 project and inspected the project for compliance with federal regulatory standards.[2]

---

[2] The three inspection reports in the record confirm that the FHWA's interest was not in structural design or specification but in cost control and avoidance of delay in a highway project at a critical junction of two interstate highways. (Doc. 1, pp. 116-26). For example, in the first inspection report, (Doc. 1, pp. 116-17), the FHWA noted generally that the "project is being completed in reasonably close conformity with the approved plans, specifications, special provisions, and approved plan revisions." (Doc. 1, p. 116). The FHWA discussed two pending change orders, the fact that the "additional cost" created by the change orders was "being absorbed by the contractor," and the expectation that the change orders would save time. (Doc. 1, p. 116). The FHWA also considered regulatory matters such as the absence workplace accidents, the presence of "all

Finally, none of the work that Granite performed on the I-59/I-65 project is work that the FHWA would have had to do itself or that it would have had to hire another company to do in the absence of Granite's participation in the project.  As noted, the FHWA does not build interstate highways; it provides funding to states to construct and maintain sections of interstate highways within states' boundaries.  The states own those sections of interstate highways.  Private highway contractors and subcontractors work for state officials, not federal officers.

Because the FHWA's responsibilities under the PoDIs concern approval and inspection activities, the Court concludes that the difference between Granite's relationship with the FHWA and James Construction's relationship with the FHWA in *City of Walker* is one of degree, not of kind.  Notably, in *City of Walker*, James Construction's work on the project's hydraulic design – the basis of the plaintiffs' claims against James Construction – was subject to FHWA inspection and approval. *City of Walker*, 877 F.3d at 569.  Nothing in the record here suggests that the FHWA's involvement in the I-59/I-65 project extends beyond inspection and approval—quintessential regulatory functions.  "[D]ifferences in the degree of regulatory detail or supervision cannot by themselves transform [Granite's] regulatory *compliance* into the kind of assistance that might bring the [FHWA]

---

required federal posters" on a bulletin board "located at the contractor's office," and the reporting of "certified payrolls."  (Doc. 1, p. 117).

within the scope of the statutory phrase '*acting under*' a federal 'officer.'" *Watson*, 551 U.S. at 157 (emphasis in *Watson*).

The Court acknowledges Granite's effort through a Freedom of Information Act request to obtain documents that may shed light on the scope of the FHWA's involvement in the I-59/I-65 project, (Doc. 86-11), and Granite's related request, if the Court were inclined to grant the plaintiffs' motion to remand, that the Court delay a decision until the FOIA request is satisfied.[3] During oral argument, counsel for Granite stated that the company expects that responsive documents will evidence an even greater degree of FHWA control than the documents Granite obtained through its ALDOT subpoena. But counsel for Granite did not explain, with specificity, what additional information these documents may reveal, and more than one month has passed since Granite asked the Court to withhold a decision on the plaintiffs' motion to remand. Given that this action is entering its fourth year, it is not appropriate to delay a decision without a surer promise of information that would better-support Granite's jurisdictional argument.[4]

---

[3] Counsel for Granite made this request during oral argument on November 10, 2021.

[4] During oral argument, counsel for Granite detailed several failed attempts to resolve the outstanding FOIA request. Counsel for Granite did not identify a plan or a timeframe for resolution, other than the potential for a lawsuit, which counsel admitted he wished to avoid.

## IV.  CONCLUSION

For the reasons discussed above, the Court concludes that Granite was not "acting under" a federal officer for purposes of the federal officer removal statute. That alone prevents Granite from satisfying the requirements for federal officer removal. Accordingly, the Court grants the plaintiffs' motion to remand.

Pursuant to 28 U.S.C. § 1447(d), this remand order is "reviewable by appeal or otherwise." *See BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021) (quotations omitted). Pursuant to Rules 54(a) and 62(a) of the Federal Rules of Civil Procedure, proceedings to enforce this order are stayed automatically for 30 days from the date on which the Clerk of Court enters the order.[5] Absent an appeal, the Clerk of Court shall please return this action to state court on the 31st day following the entry of this order.

**DONE** and **ORDERED** this December 20, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[5] Rule 54(a) provides: "'Judgment' as used in these rules includes a decree or any order from which an appeal lies."